NICHOLSON v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:NICHOLSON v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 NICHOLSON v. STATE
2018 OK CR 10
Case Number: F-2016-927
Decided: 04/26/2018
IKE FRANK NICHOLSON, JR., Appellant v. THE STATE OF OKLAHOMA, Appellee.

Cite as: 2018 OK CR 10, __ __

 

OPINION
LEWIS, VICE-PRESIDING JUDGE:
¶1 Ike Frank Nicholson, Jr., Appellant, was tried by jury and convicted of second degree murder, in violation of 21 O.S.2011, § 701.8(1), in the District Court of Osage County, Case No. CF-2015-340.[1] The jury sentenced Appellant to life imprisonment. The Honorable M. John Kane IV, District Judge, pronounced judgment and sentence accordingly.[2] Mr. Nicholson appeals.
FACTS
¶2 Appellant and his girlfriend, Carrie Lira, traveled from Bethany to Tulsa in late October, 2015, hoping to locate Carrie's missing sister, Kelli. They learned from Antwuan Adamson that Vallon Broadus might be holding Kelli against her will. On the evening of October 21, Appellant, Carrie Lira, and Antwuan Adamson met at Megan Burkett's residence in Tulsa, expecting that Vallon Broadus might be there with Kelli. Neither Broadus nor Kelli were there when they arrived. They parked their car around the corner, and sat waiting in Antwuan Adamson's car just down the street from the residence.
¶3 Within an hour or two, Vallon Broadus drove up to Burkett's house in a red car and parked in the driveway. Antwuan Adamson had gone inside the Burkett residence before Broadus arrived, and saw some of the incident that followed on a home video surveillance monitor.
[3] By Appellant's own account, he got out of a vehicle and quickly approached the car driven by Vallon Broadus, carrying a 12 gauge shotgun and yelling for Kelli to "get out of the car!"[4] Carrie Lira began driving Adamson's car toward the driveway to block Broadus's exit.
¶4 According to Appellant, the red car suddenly lurched backward in his direction, spinning its tires in the gravel, requiring him to step to the left side to avoid being hit. Appellant later admitted to police that he pointed the shotgun's attached flashlight into the driver's eyes as the car went by. He also admitted that the shotgun discharged as he pointed it at the driver, sending several pellets through the driver's windshield, striking and killing Vallon Broadus. The car backed into a large post and stopped.
¶5 After seeing part of the incident on camera, Antwuan Adamson quickly walked outside the house. There he saw the Appellant lowering the barrel of the shotgun from a shooting position. Appellant was standing about ten feet to the front side of the red car. Adamson got into his car. Appellant, still carrying the shotgun, jumped in the back seat and told Adamson to drive him around the corner. He drove to a nearby apartment, where Appellant and Carrie Lira got out. Adamson said Appellant took the shotgun with him. Adamson drove away. The shotgun was never recovered. Appellant and Carrie Lira were later arrested in Oklahoma City.
¶6 In a subsequent recorded interview with investigators, which was played for the trial jury, Appellant stated as Broadus's car came toward him, "I think I shot him. I think I shot the windshield." He denied intending to kill Broadus, saying he wanted to intimidate him and make him cooperate in efforts to find Carrie's sister, Kelli. After the shooting, Appellant and Carrie got in Adamson's car, rode with Adamson around the corner to their own car, and escaped the scene. Appellant essentially claimed he committed an accidental shooting, and fled in a panic because of his past run-ins with the law. The recording also showed that Appellant declined the investigator's request that he provide a DNA sample for comparison. Further facts will be discussed as necessary to the resolution of the issues on appeal.
ANALYSIS
¶7 In Proposition One, Appellant argues that the trial court erred in finding prosecution witness Antwuan Adamson unavailable to testify at trial and admitting the transcript of his preliminary examination testimony. He also argues the admission of the transcript violated his constitutional right to confrontation. This Court reviews the trial court's finding of a witness's unavailability for abuse of discretion. Mathis v. State, 2012 OK CR 1, ¶ 20, 271 P.3d 67, 75. An abuse of discretion is a clearly erroneous conclusion, contrary to the logic and effect of the facts presented. Pullen v. State, 2016 OK CR 18, ¶ 4, 397 P.3d 922, 925.
¶8 We find that the trial court's finding that Adamson was unavailable was not clearly erroneous, and admission of the transcribed testimony was not an abuse of discretion. Because the witness was unavailable, and Appellant had a prior opportunity to cross-examine the witness at preliminary examination, admission of the transcript at trial did not violate Appellant's right to confrontation. Mathis, 2012 OK CR 1, ¶ 19, 271 P.3d at 75; Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). Proposition One is denied.
¶9 In Proposition Two, Appellant argues that the flight instruction given by the trial court was reversible error. He waived review for all but plain error when he failed to object or request different instructions at trial. Simpson v. State, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693. Appellant must therefore show a plain or obvious error in this instruction affected the outcome of the trial. Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. This Court will correct plain error only where it seriously affects the fairness, integrity or public reputation of the proceedings. Id. We find no plain or obvious error here. Mitchell v. State, 1993 OK CR 56, ¶ 8, 876 P.2d 682, 684; Ashton v. State, 2017 OK CR 15, ¶ 36, 400 P.3d 887, 897. Proposition Two is without merit.
¶10 Proposition Three argues that the trial court's violation of section 894 of Title 22 in two written communications to the jury was reversible error. These communications answered two simple questions by referring jurors back to their instructions. The communications met no objection at trial, waiving all but plain error, as defined above. Section 894 requires that when the jury desires further instruction after retiring to deliberate, the trial court should conduct the jury to the courtroom and instruct them in the presence of, or after notice to, the prosecutor and defense counsel. The written response procedure used here, though it happens in trial courts every day, and was agreed to by counsel after consultation, is a plain violation of the statute. Cipriano v. State, 2001 OK CR 25, ¶ 48, 32 P.3d 869, 879 (finding open court requirement of section 894 is mandatory).
¶11 This Court has more than once indicated that when a trial court's communications with the jury violate the dictates of section 894--even with the agreement or acquiescence of the parties--a "presumption of prejudice arises." Mitchell v. State, 2011 OK CR 26, ¶ 130, 270 P.3d 160, 188 (quoting Givens v. State, 1985 OK CR 104, ¶ 19, 705 P.2d 1139, 1142). This presumption of prejudice was said to be rebuttable, and could be "overcome if, on appeal, this Court is convinced that, on the face of the record, no prejudice to the defendant occurred." Id. In Mitchell, the Court found the presumption of prejudice rebutted where "the court's written response accomplished the same result as if the court had brought the jury into the courtroom and responded verbally." Id.
¶12 However, upon closer review of prior cases, we find this presumption of prejudice unjustified when the trial court communicates with the jury in writing after affording counsel notice and an opportunity to be heard. Smallwood v. State, 1995 OK CR 60, ¶¶ 80-82, 907 P.2d 217, 237-38 (citing Brown v. State, 1975 OK CR 13, ¶¶ 9-10, 530 P.2d 1056, 1058) (holding prejudice is not presumed from trial court's written communication with jury after consulting with counsel). Any suggestion to the contrary in Mitchell, Givens, or other published cases, is hereby overruled.[5] 
¶13 Reversal of a judgment for a procedural error is prohibited unless the error "has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 20 O.S.2011, § 3001.1 (emphasis added). The correction of unpreserved error always remains a matter of discretion, rather than legal right, and is generally warranted only when the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings . . . ." Simpson, 1994 OK CR 40¶ 30, 876 P.2d at 700-01 (quoting United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776-77, 123 L.Ed.2d 508, 518 (1993). 

¶14 The supplemental instructions here were given to the jury in writing after consultation with counsel. Neither party requested that the jury be returned to the courtroom for these instructions. Appellant has not shown that the instructions themselves were incorrect, or that other instructions should have been given. The trial court's technical violation of section 894 by failing to conduct the jury to the courtroom for these instructions did not seriously affect the fairness, integrity, or public reputation of the proceedings. Worcester v. State, 1975 OK CR 111, ¶ 20, 536 P.2d 995, 1001 (finding a "technical violation" of section 894 by written communication was harmless error). No relief is warranted. Proposition Three is denied.
¶15 In Proposition Four, Appellant complains that evidence of his prior convictions, and his refusal to give a requested sample of his DNA, should not have been admitted. He failed to object to the evidence and waived all but plain error, as defined above. Evidence that the defendant in a criminal trial has been convicted of a felony is admissible to attack his credibility as a witness "if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." 12 O.S.2011, § 2609(A)(1). Convictions involving dishonesty or false statement are also admissible. Evidence of other crimes, wrongs, or bad acts is inadmissible to prove action in conformity therewith, but can be admissible for other purposes not relevant here. 12 O.S.2011, § 2404(B).
¶16 The evidence of Appellant's criminal record was incidentally admitted through Appellant's own references in his statement to police. The evidence was not offered for a specific purpose, and was not otherwise emphasized by the State or defense. The jury was never informed of the precise nature of Appellant's criminal history. The better practice would have been to exclude this evidence by redacting the videotape; but in light of the overwhelming evidence of guilt, this error did not seriously affect the fairness, integrity, or public reputation of the proceedings.
¶17 We reach the same conclusion regarding evidence that Appellant refused to voluntarily provide a DNA sample upon request. In Bosse v. State, 2017 OK CR 10, 400 P.3d 834, the Court assumed, without deciding, that evidence of a defendant's exercise of his Fourth Amendment right to refuse consent to a search may not be used as substantive evidence of guilt. Id., 2017 OK CR 10, ¶ 40, 400 P.3d at 851. This evidence was incidentally admitted with Appellant's statement, and again, was not emphasized during the trial as evidence of Appellant's guilt. Reviewing for plain error, we find that this evidence did not seriously affect the fairness, integrity, or public reputation of the proceedings, and its admission was harmless beyond a reasonable doubt. Proposition Four is denied.
¶18 In Proposition Five, Appellant argues that prosecutorial misconduct deprived him of a fair trial. The alleged misconduct drew no objection at trial and will be reviewed only for plain error, as defined above. We evaluate the challenged prosecutorial conduct within the context of the entire trial, considering the propriety of the prosecutor's actions, the strength of the evidence, and the corresponding arguments of defense counsel. Hanson v. State, 2009 OK CR 13, ¶ 18, 206 P.3d 1020, 1028. The Court grants relief for prosecutorial misconduct only when it is so flagrant that it renders the trial or sentencing fundamentally unfair. Williams v. State, 2008 OK CR 19, ¶ 124, 188 P.3d 208, 230. Appellant has not shown plain or obvious misconduct in the prosecutor's statements, and no relief is warranted. Proposition Five is denied.
¶19 In Proposition Six, Appellant claims he was denied the effective assistance of counsel by his attorney's allegedly unreasonable omission to: (1) fully argue for the exclusion of Antwuan Adamson's prior testimony; (2) conduct thorough cross-exam of Antwuan Adamson at preliminary; (3) object to evidence of his prior convictions and his refusal to provide a DNA sample upon request; (4) object to prosecutorial misconduct; (5) object to improper instructions on flight; and (6) enter a properly worded stipulation.
¶20 Appellant also filed an Application for Evidentiary Hearing on Sixth and Fourteenth Amendment Claims (the "Application") seeking remand to supplement the record on appeal with six (6) extra-record exhibits supporting his claim. This Court reviews ineffective assistance claims with the two-pronged test of Strickland v. Washington, 466 US 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), requiring that the appellant show both unreasonably deficient performance by counsel and resulting prejudice, in the form of an unreliable verdict or sentence. Id., 466 U.S. at 687, 104 S.Ct. at 2064.
¶21 We review an application for evidentiary hearing filed pursuant to Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S.Supp.2017, Ch.18, App., to determine whether Appellant has shown "clear and convincing evidence [that] there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." This standard is less demanding than the underlying Strickland test. Where a strong possibility of ineffective counsel is shown by clear and convincing evidence, Appellant should be afforded further opportunity to develop his claim, and remand is granted. Simpson v. State, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905-06.
¶22 Where our review discloses no clear and convincing evidence of a strong possibility of ineffective assistance, we deny remand for a hearing and, necessarily, conclude that Appellant cannot show that counsel was ineffective under the two-pronged Strickland standard. Id. Reviewing the extra-record materials and the arguments submitted here, Appellant has not shown that counsel's representation was unreasonably deficient, or that any deficient representation creates a reasonable probability of a different outcome at trial. Appellant's Application for Evidentiary Hearing on Sixth and Fourteenth Amendment Claims, and Proposition Six, are therefore denied.
¶23 In Proposition Seven, Appellant argues his sentence is excessive. This Court will not disturb a sentence within statutory limits unless, under the facts and circumstances of the case, it is so excessive as to shock the conscience of the Court. Pullen, 2016 OK CR 18, ¶ 16, 387 P.3d at 928. Appellant's life sentence for murder does not meet that demanding test. Proposition Seven warrants no relief.
¶24 Appellant's Proposition Eight argues that the accumulation of errors in this case warrants reversal or modification. We found error in the trial court's non-compliance with section 894 in its communications to the jury, and the failure to redact references to Appellant's criminal history and exercise of his Fourth Amendment rights from his taped interview with police. These unpreserved errors had no serious effect on the fairness, integrity, or public reputation of the conviction or sentencing proceedings; and any constitutional error was harmless beyond a reasonable doubt. Finding no individual harmful errors, and no prejudicial accumulation of harm from individually harmless errors, this proposition is denied. Martinez v. State, 2016 OK CR 3, ¶ 86, 371 P.3d 1100, 1119.
DECISION
¶25 The Judgment and Sentence is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2018), the MANDATE is ORDERED issued upon the delivery and filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF OSAGE COUNTY
HONORABLE M. JOHN KANE IV, DISTRICT JUDGE






APPEARANCES AT TRIAL

APPEARANCES ON APPEAL


STUART ERICSON
115 W. THIRD ST., STE. 417 TULSA, OK 74103 ATTORNEY FOR DEFENDANT

VIRGINIA SANDERS
P.O. BOX 926 NORMAN, OK 73070 ATTORNEY FOR APPELLANT


R. KYLE ALDERSON
ASSISTANT DISTRICT ATTORNEY
628½ KIHEKAH, THIRD FLOOR
PAWHUSKA, OK 74056
ATTORNEY FOR THE STATE

MIKE HUNTER
ATTORNEY GENERAL JENNIFER B. WELCH
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
ATTORNEYS FOR APPELLEE 


OPINION BY: LEWIS, V.P.J.
LUMPKIN, P.J.: Specially Concurs
HUDSON, J.: Concurs
KUEHN, J.: Specially Concurs
ROWLAND, J.: Concurs

FOOTNOTES
[1] The jury acquitted Appellant of first degree murder and convicted him of the lesser included offense of second degree depraved mind murder. The jury was also instructed to consider the lesser included offenses of second degree felony murder in the commission of feloniously pointing a firearm, and first degree manslaughter in the commission of misdemeanor reckless conduct with a firearm.
[2] Appellant must serve 85% of his sentence before he is eligible for consideration for parole. 21 O.S.Supp.2014, § 13.1(2).
[3] The device had no recorder.
[4] Kelli was not in the car, it turns out, and turned up safely after this incident.
[5] See also, e.g., Douglas v. State, 1997 OK CR 79, ¶¶ 105-106, 951 P.2d 651, 678-79 (initially presuming prejudice, but finding section 894 error harmless, and encouraging trial courts to "obtain waivers" from the parties); Boyd v. State, 1977 OK CR 322, ¶ 13, 572 P.2d 276, 280 (initially presuming prejudice, though trial court's communication to the jury was reduced to writing in the presence of both counsel, but finding error "in failing to return the jury to the courtroom in compliance with Section 894" was harmless).




LUMPKIN, PRESIDING JUDGE: SPECIALLY CONCURRING
¶1 I concur in the Court's decision to affirm the Judgment and Sentence in this case. However, I write separately to express my concerns on the need to correctly and completely cite, and not paraphrase, our prior case law. Specifically, regarding the standard of plain error review, in Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923, citing Simpson v. State, 1994 OK CR 40, ¶¶ 3, 11, 23, 876 P.2d 690, 694, 695, 698 we said:
To be entitled to relief under the plain error doctrine, [the defendant] must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. See Simpson v. State, 1994 OK CR 40, ¶¶ 3, 11, 23, 876 P.2d 690, 694, 695, 698; 20 O.S.2001, § 3001.1 . If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of justice." Simpson, 1994 OK CR 40, ¶ 30, 876 P.2d at 701 (citing United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993); 20 O.S.2001, § 3001.1. 
¶2 As I noted in Underwood v. State, 2011 OK CR 12, 252 P.3d 221:
We must be careful with the words we use due to the fact our readers evaluate those words for future arguments. Slight changes give rise to arguments that standards of review have changed when in fact they have not. I would just urge the Court to be consistent in the verbiage it uses to explain the methods utilized in analyzing issues on appeal.
Id., 2011 OK CR 12, ¶ 1-2, 252 P.3d 221, 259 (Lumpkin, J., concurring in result).




KUEHN, J., SPECIALLY CONCURRING:
¶1 I specially concur to address the allegation that the majority is incorrect in paraphrasing the plain error standard. Presiding Judge Lumpkin correctly outlines the established test for plain error developed under the Simpson case. However, I completely disagree that the Simpson or Hogan language, which we all understand fully, has to be drafted word for word in every opinion we release. A paraphrase of the Hogan language, properly attributed, is the legally correct way to cite to the plain error test. Mandating that judges of this Court must quote Simpson or Hogan completely in every analysis is inappropriate, and at times completely unnecessary.
¶2 I would like to note that if a plain error is not found during an analysis, then 1) the language regarding any "affect the [error] had on the outcome of the trial", or 2) the fourth "prong" that is delineated in Simpson and Hogan - to weigh the harm in an error to correct it - are not only unnecessary to discuss, but are completely irrelevant to the analysis. No error means nothing in the jury's decision was affected and there is nothing to weigh.
¶3 Also, if the Court finds error occurred, then citing to cases that outline the entire test in support of the argument, is not only an appropriate legal writing skill, it is a fundamental way to inform the reader of the standard the Court is applying to the facts. To insinuate that anything less than a verbatim recitation of Hogan in each analysis will lead to straying arguments and chaos in deciphering the standard is nonsensical.
¶4 By citing to Hogan, the reader knows that the test that was applied is the Simpson test. To be exact, the reference to paragraph 38 in Hogan will lead the reader to the following language in Hogan: "To be entitled to relief under the plain error doctrine, Hogan must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. See Simpson v. State, 1994 OK CR 40, ¶¶ 3, 11, 23, 876 P.2d 690, 694, 695, 698; 20 O.S.2001, § 3001.1." Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. Hogan was decided in 2006. In the twelve years since that opinion, this Court has managed to both quote the test, paraphrase and cite to the standard, all without leading the legal world astray, or creating chaos in the legal community on what test this Court has used since 1994 to analyze plain error.





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1993 OK CR 56, 876 P.2d 682, MITCHELL v. STATE
Discussed
 1994 OK CR 40, 876 P.2d 690, SIMPSON v. STATE
Discussed at Length
 1995 OK CR 60, 907 P.2d 217, SMALLWOOD v. STATE
Discussed
 1977 OK CR 322, 572 P.2d 276, BOYD v. STATE
Discussed
 2001 OK CR 25, 32 P.3d 869, 72 OBJ 2629, CIPRIANO v. STATE
Discussed
 1975 OK CR 13, 530 P.2d 1056, BROWN v. STATE
Discussed
 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed at Length
 2008 OK CR 19, 188 P.3d 208, WILLIAMS v. STATE
Discussed
 2009 OK CR 13, 206 P.3d 1020, HANSON v. STATE
Discussed
 2010 OK CR 6, 230 P.3d 888, SIMPSON v. STATE
Discussed
 2011 OK CR 12, 252 P.3d 221, UNDERWOOD v. STATE
Discussed at Length
 2011 OK CR 26, 270 P.3d 160, MITCHELL v. STATE
Discussed
 2012 OK CR 1, 271 P.3d 67, MATHIS v. STATE
Discussed at Length
 2016 OK CR 3, 371 P.3d 1100, MARTINEZ v. STATE
Discussed
 2016 OK CR 18, 387 P.3d 922, PULLEN v. STATE
Discussed
 2017 OK CR 10, 400 P.3d 834, BOSSE v. STATE
Discussed at Length
 2017 OK CR 15, 400 P.3d 887, ASHTON v. STATE
Discussed
 1975 OK CR 111, 536 P.2d 995, WORCHESTER v. STATE
Discussed
 1997 OK CR 79, 951 P.2d 651, 69 OBJ 68, Douglas v. State
Discussed
 1985 OK CR 104, 705 P.2d 1139, GIVENS v. STATE
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2609, Impeachment by Evidence of Conviction of Crime
Cited
 12 O.S. 2404, Character Evidence Not Admissible to Prove Conduct - Exceptions - Other Crimes
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 3001.1, Setting Aside Judgment on Ground of Misdirection of Jury or Error in Pleading or Procedure
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited
 21 O.S. 701.8, Second Degree Murder
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA